UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MELINDA KNIGHTEN-HADLEY | CIVIL ACTION |
| VERSUS | NO. 26-454 |
| WALMART, INC., ET AL. | SECTION R (1) |

# ORDER AND REASONS

Before the Court is defendants Walmart Louisiana, LLC, and Walmart, Inc.'s (together, "Walmart") motion to compel arbitration and stay proceedings or, in the alternative, dismiss plaintiff's claims in favor of arbitration.[1] Plaintiff opposes the motion.[2] For the following reasons, the Court grants the motion.

## I. BACKGROUND

This case arises out of an alleged slip and fall on December 9, 2024, in the Walmart store at 1901 Tchoupitoulas Street in New Orleans, Louisiana.[3] Plaintiff alleges that she slipped and fell on a dangerous condition on the store's floor and sustained several injuries.[4] On December 17, 2025, plaintiff

---

1 R. Doc. 11.
2 R. Doc. 12.
3 R. Doc. 1-2.
4 *Id.* at 2.

sued Walmart in the Civil District Court for the Parish of Orleans, alleging negligence and premises liability.[5] On March 3, 2026, Walmart removed the case to this Court under 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332.[6]

Walmart deposed plaintiff on July 7, 2026.[7] At her deposition, plaintiff testified that at the time of the incident, she was employed as an independent contractor with Spark, a grocery delivery service provider.[8] In this role, plaintiff purchased items on behalf of Spark users and delivered them to the users' homes.[9] Plaintiff further testified that on the day of the incident, she had been at the Walmart store with her husband to fulfill a Spark order and to shop for herself.[10] Plaintiff testified that, at the time of the fall, she had finished finding the items for the Spark order but had not yet checked out.[11]

On August 19, 2026, Walmart filed this motion to compel arbitration and to stay the litigation pending arbitration or, in the alternative, to dismiss plaintiff's suit.[12] Walmart claims that plaintiff agreed to a Dispute Resolution

5 *Id.* at 3–4.
6 R. Doc. 1.
7 R. Doc. 11-6.
8 *Id.* at 5.
9 *Id.* at 7–8.
10 *Id.* at 5–6.
11 *Id.*at 8–9.
12 R. Doc. 11.

Agreement ("DRA") with Walmart when she registered with the Spark Driver Platform to offer delivery services as an independent contractor for Spark.[13] The DRA requires plaintiff to arbitrate all tort claims against Walmart, including those arising out of her performance of services for Spark.[14] The DRA also includes a Delegation Clause, which states that an arbitrator shall have the exclusive authority to resolve any dispute concerning arbitrability.[15] Plaintiff opposes Walmart's motion.[16]

The Court considers the motion below.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, expresses a strong federal policy in favor of enforcing arbitration agreements. *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

13 R. Doc. 11-2 at 3.
14 R. Doc. 11-3 at 9.
15 *Id.* at 10.
16 R. Doc. 12.

9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Section 3 of the FAA further provides that if any suit is brought in federal court "upon any issue referable to arbitration," the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has directed courts to "rigorously enforce" the terms of arbitration agreements. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter*, 470 U.S. at 221). The Act "leaves no place for the exercise of discretion by a district court" and requires district courts to order the parties to proceed to arbitration on issues covered by the arbitration agreement. *Dean Witter*, 470 U.S. at 218. Further, any doubts about the scope of an arbitration agreement are to be resolved in favor of arbitration. *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the Court must conduct a two-step inquiry. *Id.* at 293. First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.* This determination ordinarily involves two considerations: (1) whether there is a

valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that arbitration agreement. *Id.* But when, as here, the parties' agreement contains a delegation clause, the Court simply analyzes whether there is a valid agreement, and if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). Second, if the Court determines that the parties have agreed to arbitrate the dispute in question, it then must ask whether "any federal statute or policy renders the claim nonarbitrable." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). But if there is no argument that a federal statute or policy bars arbitration, the Court need not analyze the second step. *Id.*

If the Court finds that the making of the agreement for arbitration or the failure to comply with it are not in issue, it must order the parties to proceed to arbitration. 9 U.S.C. § 4. If the Court finds that the dispute is subject to arbitration and a party has requested a stay pending arbitration, the Court must issue the stay. *Id.* § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (holding that courts lack "discretion to dismiss the suit on the basis that all the claims are subject to arbitration").

The movant seeking to compel arbitration bears the initial burden of proving that an arbitration agreement exists by a preponderance of the evidence. *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (per curiam)). If a valid arbitration agreement exists, the party resisting arbitration has the burden to prove that the claims at issue are not amenable to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III. DISCUSSION

In determining whether there is a valid agreement to arbitrate, the Court must apply ordinary state-law principles of contract. *Will-Drill Res. Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003); *see also Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) ("Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate."). The parties agree that Louisiana contract law applies here.[17]

---

17 R. Docs. 11-2 at 11; 12 at 7.

Under Louisiana law, formation of a valid contract requires four elements: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Provenza v. Cent. & Sw. Servs., Inc.*, 775 So. 2d 84, 89 (La. Ct. App. 2 Cir. 2000) (citing La. Civ. Code Ann. arts. 1918, 1927, 1966, 1977).

Here, the record shows that plaintiff electronically agreed to the terms of the DRA, including the arbitration provision, on November 22, 2024.[18] In registering to be a Spark driver, plaintiff was presented with the terms of the DRA and then had to click "I agree" and provide her signature and contact information.[19] The following notice was displayed directly above the signature box:

> By clicking I agree, I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, including THAT THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES; that I affirmatively agree to be bound by the terms of this Agreement; and that I am legally competent to enter into this Agreement.[20]

---

18 R. Doc. 11-3 at 17.
19 *Id.*
20 *Id.*

Courts in this circuit have held that this form of notice and consent, known as a "clickwrap agreement,"[21] suffices to bind individuals to the displayed terms and conditions under Louisiana law. *See, e.g.*, *Hughes v. Uber Techs., Inc.*, 718 F.Supp.3d 571, 579–80 (E.D. La. 2024); *Express Lien, Inc. v. Handle, Inc.*, 2021 WL 2476853, at *4 (E.D. La. June 17, 2021) (collecting cases) (noting that this finding "is consistent with Louisiana law holding that 'signatures are not mere ornaments' and that 'a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it'"); *Deshotel v. PayPal, Inc.*, 2020 WL 5813322, at *7 (W.D. La. Aug. 24, 2020) (collecting cases upholding clickwrap agreements). This conclusion comports with Louisiana statutory law, which gives legal effect to both electronic contracts and electronic signatures. *See* La. Rev. Stat. Ann. § 9:2607. Thus, a valid arbitration agreement exists between Walmart and plaintiff.

[21] This is a type of contract that allows an individual to agree electronically to the terms of the contract by selecting an "I agree" box after being presented with a list of terms and conditions of use. It often appears on an internet webpage and requires that a user consent to its terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction. *See Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002).

Plaintiff's argument that there is no proof of a valid agreement because Walmart does not provide an IP address for plaintiff's agreement is without merit. Louisiana law provides that electronic signatures have the same legal effect as pen-and-paper signatures. *See Rapalo-Alfaro v. Lee*, 173 So. 3d 1174, 1182 (La. App. 4 Cir. 2015) (citing La. R.S. 9:2609). It does not require an IP address to prove the identity of the signer. Further, plaintiff testified at her deposition that she was employed as a Spark driver,[22] and Walmart's Senior Manager of Operations has testified that the Spark Driver Platform is accessible only to those who complete and sign the DRA.[23] Moreover, plaintiff confirmed at deposition that she listed her name as "Melinda Knighten" as a Spark driver because her full last name, "Knighten-Hadley," was not listed on her social security card.[24] Indeed, the DRA lists the name "Melinda Knighten" at the signature block, and Walmart's timestamps confirm the timing of the signature.[25] Plaintiff also had to enter her email address, physical address, and phone number above her signature.[26] Courts have found analogous electronic signatures to be valid under Louisiana law.

---

22 R. Doc. 11-6 at 5.
23 R. Doc. 11-5 at 2–3.
24 R. Doc. 11-6 at 6–7.
25 R. Docs. 11-3 at 17; 11-4.
26 R. Doc. 11-3 at 17.

*See, e.g.*, *Pradier v. Starbucks Corp.*, 2024 WL 4346426, at *3 (E.D. La. Sep. 30, 2024). The Court is satisfied that plaintiff electronically signed the DRA.

Plaintiff's argument that Walmart Louisiana, LLC, is not a party to the DRA and thus cannot enforce its arbitration provision is also without merit. The arbitration provision of the DRA extends to any of Walmart, Inc.'s "agents, employees, affiliates, successors, assigns, or subsidiaries."[27] And defendants' Rule 7.1 Corporate Disclosure Statement provides that Walmart, Inc., is the owner of all stock in one of Walmart Louisiana, LLC's two parent companies.[28] Thus, defendants have provided sufficient evidence to show that Walmart Louisiana, LLC, falls within the reach of the arbitration provision in the DRA.

Further, Walmart did not waive the right to arbitrate. To establish waiver, plaintiff must show that Walmart "knowingly relinquished the right to arbitrate by acting inconsistently with that right." *Garcia v. Fuentes Rest. Mgmt. Servs., Inc.*, 141 F.4th 671, 676 (5th Cir. 2025). Plaintiff asserts that Walmart knew about her signing of the DRA at the outset of this litigation because Walmart served plaintiff with an interrogatory in April of 2026 asking whether plaintiff was a Spark driver.[29] But plaintiff did not answer

---

27 *Id.* at 9.
28 R. Doc. 4 at 2.
29 R. Doc. 12 at 17.

the interrogatory,[30] and that Walmart served it does not establish that Walmart knew that plaintiff's answer was in the affirmative. Indeed, the record indicates that Walmart learned of plaintiff's employment with Spark at plaintiff's deposition in July of 2026, and Walmart filed this motion about a month later.[31] Plaintiff also argues that Walmart was aware of her status as a Spark driver at the outset of this litigation because Walmart drafted the language in the DRA.[32] But that Walmart may have drafted the language in the DRA does not establish that it knew the identity of every person who subsequently signed it. Because there is no evidence that Walmart "knowingly relinquished the right to arbitrate by acting inconsistently with that right," Walmart did not waive its right to arbitrate. *Id.*

Finally, the DRA includes a delegation clause that provides that "only an arbitrator, and not any federal, state, or local court or agency" has the "exclusive authority" to resolve disputes regarding the "interpretation, applicability, enforceability, or formation" of the arbitration agreement, "including without limitation any dispute concerning arbitrability."[33] Plaintiff argues that this dispute doesn't fall within the scope of the

---

30 R. Doc. 12-1 at 17.
31 R. Docs. 11-6; 11.
32 R. Doc. 12 at 16.
33 R. Doc. 11-3 at 10.

arbitration provision.[34] But because the agreement includes this delegation clause, the Court need only ask whether there is "clear and unmistakable evidence that the parties intended to arbitrate" questions of arbitrability. *Lloyd's*, 921 F.3d at 514. Here, the signed DRA explicitly delegates "any dispute concerning arbitrability" to an arbitrator.[35] Plaintiff's arguments regarding formation of the agreement as a whole do not negate this plain language. And the Fifth Circuit has held that when a plaintiff does not "explain how his [formation] challenges applie[s] to the delegation clause specifically," courts should "consider that clause to be valid and compel arbitration." *Hill v. Jackson Offshore Holdings, L.L.C.*, 175 F.4th 324, 333–34 (5th Cir. 2026). Thus, because an agreement to arbitrate exists and there is clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability, arbitration is proper here.

---

34 R. Doc. 12 at 11.
35 R. Doc. 11-3 at 10.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Walmart's motion to compel arbitration and stay proceedings against it. This case shall be STAYED AND ADMINISTRATIVELY CLOSED pending arbitration.

New Orleans, Louisiana, this 29th day of September, 2026.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE